SUPPRESSED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

**FILED**

OCT 2 9 2025

**U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) |
| ALEXANDER SAMPSON AND DANA KELLY, | ) |
| Defendants. | ) |

**4:25CR552 SEP/SRW**

## INDICTMENT

The Grand Jury charges:

## COUNT 1

(Conspiracy to Commit Wire Fraud)

**A. Introduction**

1.      The Paycheck Protection Program ("PPP") was a COVID-19 pandemic relief program administered by the Small Business Administration ("SBA") that provided forgivable loans to small businesses for job retention and certain other expenses. The PPP permitted participating third-party lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities, rent/mortgage, accounts payable and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic. PPP loans were fully guaranteed by the SBA.

1

2.    To obtain a PPP loan, a qualifying business had to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, including that the business was in operation and either had employees for whom it paid salaries and payroll taxes or paid independent contractors. A business applying for a PPP loan was required to provide documentation showing its payroll expenses, such as filed federal income tax documents.

3.    PPP loan applications were electronically submitted or caused to be submitted by the borrower and received through SBA servers located in Virginia and Oregon. Once approved, the business received the PPP loan proceeds via an electronic funds transfer from the third-party lender to a financial account under the control of the business.

4.    The PPP permitted participating third-party lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities, rent/mortgage, accounts payable and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic. PPP loans are fully guaranteed by the SBA. In the event of default, SBA would fully satisfy the lender for any balance remaining on the loan. Once approved for a PPP loan by a participating third-party lender, small businesses could receive loans of up to $10,000,000.

5.    A PPP loan application was processed by the third-party participating lender with whom the application was filed. If a PPP loan application was approved, the participating lender would fund the PPP loan; in order to encourage PPP loans to be issued, the loan was guaranteed by the SBA.

Data from the application, including information from the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

6.      The proceeds of a PPP loan could be used for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, or mortgage interest payments. The proceeds of a PPP loan were not permitted to be used by the borrowers to purchase consumer goods, automobiles, personal residences, clothing, jewelry, to pay the borrower's personal federal income taxes, or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

7.      Under the applicable PPP rules and guidance, recipients of PPP loans could apply to have the interest and principal on the PPP loan fully forgiven, meaning that the borrower would owe nothing and would have no obligation to repay the PPP loan.  To obtain full forgiveness of the PPP loan, borrowers had to attest that they had "not reduced the number of employees or the average paid hours of [their] employees" during the loan period, that the loan proceeds had been spent on payroll costs and other permitted expenses and that at least 60% of the loan proceeds had been spent on payroll costs.

8.      Itria Ventures, LLC was a Delaware third party participating lender for SBA PPP loans.

**B.    Conspiracy**

9.      Between on or about August 1, 2019, and continuing to on or about August 1, 2021, within the Eastern District of Missouri and elsewhere, the defendants,

3

ALEXANDER SAMPSON
AND
DANA KELLY,

and others known and unknown to the Grand Jury, did voluntarily and intentionally combine, conspire, confederate and agree with each other, to devise and intend to devise a scheme and artifice to defraud the Small Business Administration, an agency of the United States and financial institutions through use of interstate wire communications, in violation of Title 18, United States Code, Section 1343.

**C.    Manner and Means**

The ways, manner, and means by which the foregoing objective of the conspiracy to commit wire fraud were to be accomplished included, but were not limited to, the following:

10.    The primary purpose of the conspiracy was for defendant **Alexander Sampson**, defendant **Dana Kelly**, and persons unknown to the Grand Jury, to defraud the Small Business Administration, an agency of the United States, to secure a PPP loan from a federal government program for which they were ineligible.

11.    It was part of the scheme and artifice to defraud and to obtain money and property that:

    a.    Defendant **Dana Kelly** organized "The Firm D&B LLC," a tax preparation service, with the Missouri Secretary of State on or about November 16, 2016.

    b.    Defendant **Dana Kelly** organized "Reign Restaurant LLC" ("Reign") with the Missouri Secretary of State on or about August 14, 2019, and used the Articles of Organization issued by the Missouri Secretary of State to obtain an Employer Identification Number

4

("EIN"), a tax identification number issued to businesses, from the Internal Revenue Service.

c. Reign opened its doors for business on or about July 27, 2020.

d. On or about August 17, 2020, Defendant **Alexander Sampson** and Defendant **Dana Kelly** used the EIN issued for Reign to open a business checking account with Bank of America.

e. In submitting an application for a PPP loan to Itria Ventures, LLC, on or about February 11, 2021, Defendant **Alexander Sampson** falsely asserted, on SBA Form 2483, titled "Paycheck Protection Program Borrower Application Form Revised January 8, 2021," the following:

   i.   Reign was established on January 1, 2019;

   ii.  The average monthly payroll was $158,884;

   iii. Reign had 49 employees;

   iv.  Alexander Sampson owned 70% of Reign;

   v.   The purpose of the PPP loans was to assist with payroll costs, rent/mortgage interest, and utilities;

   vi.  Reign was in operation on February 15, 2020, and had employees for whom it paid salaries and payroll taxes or paid independent contractors; and

   vii. The economic uncertainty of the pandemic made the loan necessary to support

5

the ongoing operation of Reign.

f.   In support of the PPP loan, Defendant **Alexander Sampson** submitted to Itria Ventures LLC the fraudulently prepared Internal Revenue Service Form 940 for 2019: Employer's Annual Federal Unemployment (FUTA) Tax Return, and through which B.R., an employee of Defendant **Dana Kelly's** tax preparation business, "The Firm," claimed that in tax year 2019, Reign paid $1,399,297.47 to its employees and paid the State of Missouri unemployment taxes.

g.   As further support of its PPP application, Defendant **Alexander Sampson** submitted to Itria Ventures LLC Internal Revenue Service Form 1065 styled, "U.S. Return of Partnership Income," purportedly prepared by B.R., an employee of Defendant **Dana Kelly's** tax preparation business, "The Firm," and which made the following fraudulent claims:

   i.   For tax year 2019, Reign grossed $3,458,595 in gross receipts or sales, paid $1,399,297.47 to its employees, and made guaranteed payments to partners totaling $597,500;

   ii.   Defendant **Alexander Sampson's** share of the profit, loss, and capital was 60%;

   iii.   Defendant **Dana Kelly's** share of the profit, loss, and capital was 10%, and she was the partnership's designated representative; and

   iv.   R.M.T., D.K.R., R.R.J., R.E.J., and L.L.C. held a 5% share of Reign's profit, loss, and capital, for a total of 25% of the business.

6

l.  In support of the PPP loan, Defendant **Alexander Sampson** also submitted the fraudulently prepared Internal Revenue Service Form 941 for 2020: Employer's QUARTERLY Federal Tax Return, and through which B.R., an employee of Defendant **Dana Kelly's** tax preparation business, "The Firm," claimed that in the first quarter of 2020, Reign paid wages, tips, and compensation of $346,937.89 to its employees, withheld $18,098.90 in federal income tax from the wages, tips, and other compensation, and had a tax liability of $71,180.34.

m.  On or about February 13, 2021, Defendant **Alexander Sampson** finalized a PPP loan for Reign and directed loan proceeds of $397,210 to be deposited into the Bank of America account of Reign for which he and Defendant **Dana Kelly** were the sole signatories.

n.  On or about July 6, 2021, in seeking forgiveness of the $397,210 PPP loan, Defendant **Alexander Sampson** made the following false statements on SBA Form 3508EZ, styled "PPP Loan Forgiveness Application Form 3508EZ Revised January 19, 2021":

   i.  Between February 18, 2021, to April 14, 2021, Reign paid $278,047 for payroll and $39,150 for utilities;

   ii.  They sought forgiveness of the $397,210 PPP loan on the grounds that the total disbursement been used to pay eligible business costs; and

   iii.  Reign was unable to operate at the same level of business activity as before February 15, 2020, due to compliance with COVID-19 requirements established

by the Secretary of Health and Human Services, the Director of the Centers for Disease Control and Prevention, or the Occupational Safety and Health Administration.

o. Defendant **Alexander Sampson** and Defendant **Dana Kelly** used $234,629.68 of the PPP loan that had been electronically deposited into the Bank of America business account issued to Reign for personal and non-allowable expenses including, but not limited to: dining out, clothing, and car loans.

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO

(Wire Fraud)

The allegations set forth above are re-alleged and incorporated by reference as if fully set out herein.

10.     Between on or about August 1, 2019, and continuing to on or about August 1, 2021, in the Eastern District of Missouri, and elsewhere, the defendants, **ALEXANDER SAMPSON and DANA KELLY**, with the intent to defraud, devised and intended to devise a scheme and artifice to defraud the Small Business Administration and to obtain money and property from the Small Business Administration by means of material false and fraudulent pretenses, representations, and promises, as described further herein.

12.     On or about February 11, 2021, in the Eastern District of Missouri, the defendants,

**ALEXANDER SAMPSON
AND
DANA KELLY,**

for the purpose of executing the above-described scheme to defraud, did cause to be transmitted, by means of interstate wire transmissions, specifically, a fraudulent PPP loan application on behalf of Reign Restaurant, LLC.

In violation of Title 18, United States Code, Sections 1343 and 2.

9

## COUNT THREE

(Making a False Statement)

The allegations set forth above are re-alleged and incorporated by reference as if fully set out herein.

13.    On or about February 11, 2021, in the Eastern District of Missouri, the defendants,

**ALEXANDER SAMPSON**
**AND**
**DANA KELLY,**

did willfully and knowingly make and use a false writing and document, knowing the same to contain a materially false, fictitious, and fraudulent statement and entry in a matter within the jurisdiction of the Small Business Administration, an agency of the executive branch of the United States, by submitting Internal Revenue Service Form 1065, styled "U.S. Return of Partnership Income," claiming that Reign had gross receipts or sales of $3,458,595 and paid salaries and wages of $1,399,297 in tax year 2019, when in fact, Reign was not in operation during tax year 2019 and did not open for business until July 27, 2020.

In violation of Title 18, United States Code, Sections 1001(a)(3) and 2.

## COUNT FOUR

(Making a False Statement)

The allegations set forth above are re-alleged and incorporated by reference as if fully set out herein.

14.    On or about February 11, 2021, in the Eastern District of Missouri, the defendants,

**ALEXANDER SAMPSON**
**AND**
**DANA KELLY,**

did willfully and knowingly make and use a false writing and document, knowing the same to contain a materially false, fictitious, and fraudulent statement and entry in a matter within the jurisdiction of the Small Business Administration, an agency of the executive branch of the United States, by submitting Internal Revenue Service Form 941 for 2020: Employer's QUARTERLY Federal Tax Return claiming that for the first quarter of 2020, that being January, February, and March 2020, Reign paid wages, tips, and other compensation in the amount of $346,937.89 to 42 employees and withheld federal income tax of $18,098.90 from the wages, tips, and other compensation, when in fact, Reign was not in operation in January, February, and March 2020 and did not open for business until July 27, 2020.

In violation of Title 18, United States Code, Sections 1001(a)(3) and 2.

11

## FORFEITURE ALLEGATION

The Grand Jury further finds by probable cause that:

1.  Pursuant to Title 18, United States Code, Sections 982(a)(2)(A) and 1343, upon conviction of an offense in violation of Title 18, United States Code, Section 1343 as set forth in Count 2, the defendant shall forfeit to the United States of America any property constituting, or derived from, proceeds the defendant obtained, directly or indirectly, as a result of such violation(s) and any personal property used or intended to be used to commit the offense.

2.  Subject to forfeiture is a sum of money equal to the total value of any property constituting, or derived from, proceeds the defendant obtained, directly or indirectly, as a result of the violation set forth in Count 2.

3.  Pursuant to Title 18, United States Code, Sections 982(a)(2)(B) and 1001, upon conviction of an offense in violation of Title 18, United States Code, Section 1001 as set forth in Counts 3 and 4, the defendant shall forfeit to the United States of America any property constituting, or derived from, proceeds the defendant obtained, directly or indirectly, as a result of such violation(s) and any personal property used or intended to be used to commit the offense.

4.  Subject to forfeiture is a sum of money equal to the total value of any property constituting, or derived from, proceeds the defendant obtained, directly or indirectly, as a result of the violations set forth in Counts 3 and 4.

5.  If any of the property described above, as a result of any act or omission of the defendant(s):

12

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

_____

FOREPERSON

THOMAS C. ALBUS
United States Attorney

_____

TRACY LYNN BERRY - 014753 TN
Assistant United States Attorney

13